DF

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
ASSET MANAGEMENT ASSOCIATES
OF NEW YORK, INC.,

                        Plaintiff,                  MEMORANDUM & ORDER
                                                    08-CV-2506 (TCP) (ARL)

      -against-

EMERSON TELECOMMUNICATION
PRODUCTS LLC,

                        Defendant.
-----------------------------------------------------X

PLATT, District Judge.

Before the court is a remand from the United States Court of Appeals for the Second Circuit, based upon that court's Summary Order dated October 6, 2010, pursuant to Plaintiff's Motion for Leave to Amend Complaint. For the reasons discussed below, Plaintiff's motion is **DENIED**.

### BACKGROUND

On November 8, 2006, Asset Management Associates of New York, Inc. ("Plaintiff") and Emerson Telecommunication Products LLC ("Defendant") concluded a negotiated Acquisition Agreement ("Agreement"). *See* Proposed First Am. Compl. Ex. 2 [hereinafter *Agreement*], at 2. The Agreement transferred to Plaintiff all of Defendant's capital stock of Emerson Network Power Optical Connectivity Solutions, Inc., and certain assets of Emerson Network Power Connectivity Solutions, Inc. *Agreement*. The Agreement included a post-closing adjustment process, which provided for an arbitrator to settle any disputes regarding capital valuation, if the parties came to disagree, post-closure. *Id.*

1

Rather than determine the exact value of the capital prior to the Agreement, the parties negotiated, and agreed to, a provision that "deemed" the capital's value as $8,410,989. *Id.* at Schedule 2.4. The parties negotiated, and agreed to, the Agreement provisions, specifically § 2.4 and § 2.5 of the Agreement, whereby the true value—according to "Generally Accepted Accounting Principles"—would be determined post-closing. *Agreement*, 10-11. Together, these sections, stipulated that: (1) within 45-days of the closing of the Agreement, Defendant would deliver its valuation, known as the Statement of Closing Net Working Capital ("Capital Statement"), to Plaintiff; (2) if Plaintiff disputed the Capital Statement, Plaintiff would deliver a Notice of Dispute to Defendant within 45 days; (3) upon receipt of the Notice of Dispute, the parties would consult with each other "with regard to specified points of disagreement" and Plaintiff and its accountants would be able to review all necessary records; and (4) if the parties were unable to resolve the disagreement, the parties would refer the dispute to an arbitrator with binding resolution authority. *Id.*, at 11.

A valuation dispute quickly occurred. Unable to resolve the dispute, Defendant referred the matter to the arbiter for the stipulated arbitration. Cross Mot. to Compel Arb., *Asset Mgmt. Ass. Of N.Y., Inc. v. Emerson Telecomm. Prod.'s LLC*, 08-CV-2128 [hereinafter *AMA I*], (E.D.N.Y. May 27, 2008), at 6:18, ECF No. 2. In response, Plaintiff filed, in New York State court, a petition to stay arbitration, which contended that: (1) arbitration was "time-barred;" (2) the agreed conditions to arbitration were not met; and (3) Defendant's fraud, involving its employees allegedly misrepresenting $2.6 million of obsolete inventory, was not subject to the arbitration clause. *Id.*, at 6:19.

Defendant removed the case to this Court. *AMA I*, Notice of Removal, May 27, 2008, ECF 1. The Court granted Defendant's cross-motion to compel arbitration. *AMA I*, Order, June

2

16, 2009, ECF No. 32. Plaintiff filed a motion for the Court to reconsider that decision. *Id.*, Mot. Recons., July 24, 2009, ECF No. 33. The Court denied that motion. *Id.*, Order, February 10, 2010, ECF No. 40.

On June 23, 2008, Plaintiff filed a separate Complaint in this Court, which introduced claims of breach of contract, fraudulent inducement, and negligent misrepresentation. Compl. ECF No. 1. On November 7, 2008, the Court granted, temporarily, Defendant's motion, pursuant to Section 3 of the Federal Arbitration Act, for a stay of the case. On February 10, 2009, Plaintiff filed a Motion for Leave to File an Amended First Complaint.[1] Mot. for Leave to Am. First Compl., ECF No. 21. The amended complaint proposed to add two claims: (1) equitable rescission and (2) fraudulent inducement *specifically* as to the arbitration clause (in addition to the present claim of fraudulent inducement as to the overall Agreement). *Id.* at 15-16.

Because Defendant has not given written consent to the proposed amendment, the Court must review whether to give leave to amend.

## DISCUSSION

**A.    Federal Rule 15 Standard**

Federal Rule of Civil Procedure 15(a)(2) instructs that courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). As justice is the foundation of the judicial system, so then granting leave must be the default position of the Court.

Plaintiffs should have the opportunity to present their valid claims; those claims should be decided on the merits. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be

---

[1] The Complaint, as noted, was filed on June 23, 2008. According to Rule 15 (a)(1) of the Federal Rules of Civil Procedure, Plaintiff could have amended its Complaint once "as a matter of course," within 21 days after serving it. Since this proposed amended was filed well outside that timeframe, Plaintiff made a motion pursuant to Rule 15 (a)(2), which states that Plaintiff may only amend with either (i) written consent of Defendant or (ii) leave of the Court. According to the rule, the Court "should freely give leave when justice so requires."

3

afforded an opportunity to test his claim on the merits."); *see also, Fershtadt v. Verizon Commc'ns, Inc.*, No. 07-CV-6963, 2009 WL 3294073, at *2 (S.D.N.Y. Oct. 7, 2009) ("the policy considerations that undergird the Federal Rules counsel in favor of affording litigants an opportunity to resolve their claims on the merits." (*citing Foman*, 371 U.S. at 182)).

"While Federal Rule of Civil Procedure 15(a) states that leave to amend should be granted 'when justice so requires,' motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (*citing Foman*, 371 U.S. at 182).

Whether to give leave, however, is in the discretion of the Court. *Foman*, 371 U.S. at 182 ("Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court . . . ."); *see also, SCS Commc'ns, Inc. v. Herrick Co., Inc.*, 360 F.3d 329, 345 (2d Cir. 2004) (" 'It is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court.' " (*quoting Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971))); *Petrone v. Hampton Bays Union Free Sch. Dist.*, No. 03-CV-4359, 2009 WL 2905778, at *16 (E.D.N.Y. Sept. 10, 2009) ("Although Rule 15(a)(2) specifically provides that a court 'should freely give leave when justice so requires,' it is 'within the sound discretion of the district court to grant or deny leave to amend.' " (*quoting McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007))).

The Court, however, may not simply deny the leave without reason – that would be an abuse of discretion. *Foman*, 371 U.S. at 182 ("Outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.").

Leave to amend should be denied if any of the *Foman* reasons, including futility, are present. *Burch*, 551 F.3d at 126 ("Motions to amend should generally be denied in instances of futility . . . ."). If the proposed amendment is futile (and, thus, without merit), the motion should be denied. *See Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) (*citing Friedman v. Chesapeake & Ohio Ry. Co.*, 261 F. Supp. 728, 734 (S.D.N.Y. 1966); *see also, Love v. New York Dep't of Envtl. Conserv.*, 529 F. Supp. 832, 845 (S.D.N.Y. 1981). To determine whether a claim in the proposed First Amended Complaint would be futile, the Court must

> take the allegations of the complaint as true and draw all reasonable inferences in favor of [P]laintiff. If this assessment results in the conclusion that the proposed amendment must fail as a matter of law, the amendment would be futile, and leave to amend is properly denied.

*Tyree v. Zenk*, No. 05-CV-2998, 2009 WL 1456554, at *5 (E.D.N.Y. May 22, 2009) (*quoting Gallegos v. Brandeis School*, 189 F.R.D. 256, 258 (E.D.N.Y. 1999)).

The claims alleged in the proposed First Amended Complaint must pass the *Iqbal* "plausibility test" wherein a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint may be dismissed where it fails to pass this test. *See Johnson & Johnson v. Guidant Corp.*, 525 F. Supp. 2d 336, 345 (S.D.N.Y. 2007) (*quoting Twombly*, 550 U.S. at 570).

**B.     Rescission Standard**

Under New York law, "[r]escission of a contract is permitted where a breach is so substantial as to defeat the purpose of an entire transaction." *Fink v. Friedman*, 358 N.Y.S.2d 250, 258-59 (N.Y. Sup. Ct. 1974) (*citing Callanan v. Keeseville*, 92 N.E. 747 (1910)); *O'Herron v. S. Tier Stores, Inc.*, 189 N.Y.S.2d 323 (N.Y. App. Div. 1959)). "The breach must go to the very root of the contract, rendering performance different in substance than that agreed upon and

depriving one party of the fruits of the agreement." *Id.* (*citing Dermer v. Barrett*, 195 N.Y.S. 703 (N.Y. App. Div. 1922)); *Smith v. Johannsen*, 192 N.Y.S. 478 (N.Y. App. Div. 1922). "A lesser breach will not warrant rescission." *Id.* (*citing John F. Trainor Co. v. G. Amsinck & Co., Inc.*, 140 N.E. 931 (1923)).

Under New York law, a rescission claim based upon fraudulent inducement must establish the following elements: (1) knowing misrepresentation of a material fact; (2) intention to deceive; (3) reliance on the misrepresentation; and (4) injury. *Gosmile Inc., v. Levine*, 2010 WL 5156616 (N.Y. App. Div. 2010) (*citing Sokolow, Dunaud, Mercadier & Carreras LLP v. Lacher*, 747 N.Y.S.2d 441, 446 (N.Y. App. Div. 2002)).

Rescission, however, must be made immediately upon the discovery of fraud or mistake.

> A party who intends to repudiate a contract on the grounds of fraud should do so as soon as he discovers fraud; for if, after the discovery of the fraud he treats the contract as a subsisting contract . . . he will be deemed to have waived his right of repudiation and must then bring action for damages . . . . Moreover, lapse of time without rescinding will furnish evidence that he has determined to affirm the contract . . . . And if a voidable contract has been acted upon by a party who might have avoided it and who has refrained from doing so in the hope that it may turn out to his advantage such party cannot then after abiding the event or dealing with the subject matter of the contract elect to annul the transaction.

CHARLES GREENSTREET ADDISON, A TREATISE ON THE LAW OF CONTRACTS, Vol. 1, 451-52 (6th ed. 1881). "If he be silent, and continues to treat the property as his own, he will be held to have waived the objection, and will be conclusively bound by the contract, as if the mistake or fraud had not occurred." *Grymes v. Sanders*, 93 U.S. 55, 62 (1876); *see also, Strong v. Strong*, 5 N.E. 799, 800 (1886) ("It is a settled rule, however, that the right to rescind a contract for fraud must be exercised immediately upon discovery, and that the delay in doing so . . . will be deemed an election to affirm."); *Bank of U.S. v. Nat'l City Bank of N.Y.*, 206 N.Y.S. 428, 430 (N.Y. Sup. Ct. 1924) ("True rescission which results in cancellation of the contract . . . must be promptly

availed of by [the] party as soon as he becomes aware of facts entitling him thereto by notice."); *J.J. Little & Ives Co. v. Lamb Pub. Co.*, 177 N.Y.S. 265, 268 (N.Y. Sup. Ct. 1919) ("In order to recover upon the theory of rescission, a party is required to act promptly upon discovery of the ground for rescission.").

Rescission claims have consistently been dismissed due to failure to seek the relief in less than one year. *See e.g., Silva Run Worldwide Ltd. v. Gaming Lottery Corp.,* No. 96 CIV. 3231, 1998 WL 167330, at *23 (S.D.N.Y. April 8, 1998) (dismissing rescission claims in part because Plaintiff "did not seek rescission for approximately six months"); *88 Blue Corp. v. Reiss Plaza Assocs.,* 585 N.Y.S.2d 14, 16-17 (N.Y. App. Div. 1992) (affirming order of summary judgment in part because of the "eleven month delay between the time that plaintiff first acquired knowledge of the [alleged fraud] and [when Plaintiff] took any steps to rescind the agreement"); *Int'l Motor Sports Group, Inc. v. Gordon*, No. 82709, 98 CIV 5611, 1999 WL 619633, at *5 (S.D.N.Y Aug. 16, 1999) (noting that a delay of nearly eight months "might constitute an unreasonable delay.").

"In order to obtain rescission . . . the party seeking it must show that it has no adequate remedy at law." *Rosewood Apartments Corp. v. Perpignano*, 200 F. Supp. 2d 269, 272 (S.D.N.Y. 2002) (*citing Lichtyger v. Franchard Corp.*, 223 N.E.2d 869 (1966)). "Where an adequate remedy at law is provided, the reason for granting equitable relief disappears.' " *Lewis v. City of Lockport*, 12 N.E.2d 431, 433 (1937) (*citing Del. & Hudson Canal Co. v. Atkins*, 24 N.E. 319 (1890)).

C.  **Arbitration Clause Review Standard**

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract . . . shall be valid, irrevocable,

and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (2010).

The Federal Arbitration Act ("FAA") "reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, Inc. v. Jackson*, 130 S.Ct. 2772, 2776 (2009). "The FAA . . . places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." *Id.* "Like other contracts, however, they may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.' " *Id.* "If a party challenges the validity [of the arbitration provision], the federal court must consider the challenge before ordering compliance with [the Agreement]." *Id.* at 2778.

As the Second Circuit notes, "the [United States Supreme] Court stated that the federal court may adjudicate only those issues which go 'to the 'making' of the agreement to arbitrate.' " *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 667 (2d Cir. 1997) (*quoting Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)). New York has incorporated the United States Supreme Court's holding. *See Weinrott v. Carp*, 298 N.E.2d 42 (1973). Under New York case law, "[i]t is also well settled that in those instances where a challenge is made to the validity of the arbitration clause itself, such as fraud in the inducement, the issue is for the court to decide." *Arc Elec. v. Invensys Bldg. Systems, Inc.*, 770 N.Y.S.2d 299, 301 (N.Y. App. Div. 2003) (*citing Utica Mut. Ins. Co. v. Gulf Ins. Co.*, 762 N.Y.S.2d 730 (N.Y. App. Div. 2003); *In re Teleserve Sys., Inc.*, 659 N.Y.S.2d 659 (N.Y. App. Div. 1997); *Stoianoff v. New Amer. Lib.*, 539 N.Y.S.2d 66 (N.Y. App. Div. 1989)). Finally, the Second Circuit requires a "substantial relationship between the fraud . . . and the arbitration clause in particular." *Campaniello*, 117 F.3d at 667.

D. Analysis

I. Rescission Claim

The Court will not give leave to Plaintiff to add the rescission claim. As noted above, federal, and New York, case law presents a clear standard regarding the initiation of rescission claims: it must be done *promptly* upon the discovery of the alleged fraud. Plaintiff filed the original Complaint on June 23, 2008. In the Complaint, Plaintiff alleged fraud as to the Agreement in whole; therefore, Plaintiff discovered the fraud as of that date. Plaintiff did not file its motion for leave to amend the Complaint until February 10, 2009, or 7-½ months later. 7-½ months does not constitute prompt action. Moreover, Plaintiff "discovered" the fraud even before the date of the original filing. In a letter to Defendant on April 1, 2008, Plaintiff states that "any effort to arbitrate these matters also would be met by a court action against [Defendant] for its fraud." Pl.'s Reply Mem. in further Supp. of Pet. to Stay Arb., at 6, *AMA I*, June 16, 2008, ECF No. 10. Plaintiff waited more than 10 months from the date of the letter to seek rescission. A party needs to show quick revulsion to the property; Plaintiff clearly did not. As noted above, "[i]f [Plaintiff] be silent, and continues to treat the property as [its] own, [Plaintiff] will be held to have waived the objection, and will be conclusively bound by the contract, as if the mistake or fraud had not occurred." *Grymes*, 93 U.S. at 62. The Court concludes that this delay is simply outside the bounds of a timely claim for rescission.

Moreover, if its allegations prove true after arbitration, Plaintiff still has legal remedies available to it.[2] *See e.g., Rosewood Apartments Corp.*, 200 F. Supp. 2d at 272 ("In order to obtain rescission . . . the party seeking it must show that it has no adequate remedy at law."). If

---

[2] Since its suit is temporarily stayed until post-arbitration, however, Plaintiff can still raise its non-rescission claims at that time. See e.g., *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 662 (2d Cir. 1997) ("no reason [Plaintiff] can not [sic] raise claims either of fraud or breach of contract against the [Defendant] through [or after] the agreed arbitration.").

the arbitrator finds that the inventory is worth as little as Plaintiff asserts, and Plaintiff had submitted a timely claim, perhaps Plaintiff would have had a viable rescission claim, post-arbitration. *See Fink v. Friedman*, 78 Misc.2d 429, 435, 358 N.Y.S.2d 250, 258 (1974) ("Rescission of a contract is permitted where a breach is so substantial as to defeat the purpose of an entire transaction.") (*citing Callanan v. Keeseville*, 92 N.E. 747 (1910)). The claim, however, is untimely. Therefore, the Court will not permit the amendment of this claim to the Complaint.

## II. Fraudulent Inducement as to the Arbitration Clause

Plaintiff correctly notes that the Court must address the claim of fraudulent inducement as to *the arbitration clause* separately from the claim of fraud as to the Agreement *in whole*. "To immunize an arbitration agreement from judicial challenge on the fraud in the inducement would be to elevate it over other forms of contract." *Rent-A-Center*, 130 S.Ct. at 2778 (*citing Prima Paint Corp.*, 388 U.S. at 404).

Plaintiff presents no evidence to the Court that Defendant fraudulently induced Plaintiff into consenting to the arbitration provision. Plaintiff's claim appears simply to attempt to evade the entire purpose of the arbitration: permitting a third-party to decide the value of the capital. The only proof Plaintiff would be able to provide in a trial would be the value of the capital; this value, however, is determinable—according to the Agreement—by an arbitrator.

In other words, as the Second Circuit has summarized, permitting this claim to go forward would eviscerate the distinction between the overall fraud claim and the claim of fraud as to arbitration provision.

> This fact becomes evident if one considers the evidentiary trial that would have to be conducted in this case to determine if there was fraud in the inducement of the arbitration clause. Since there is no fraud or misrepresentation that relates directly to the arbitration clause, the District Court would have to determine whether the [Defendant] defrauded [Plaintiff] . . . ; in short, the District Court would have to adjudicate the entire fraud claim. Similarly, in every instance where there is a

fraud going to the contract generally and an allegation that the arbitration clause was "part of the scheme to defraud," the court would have to adjudicate the entire scheme to defraud. Consequently, there would never be an instance where a claim of fraud going to a contract generally would be sent to arbitration by a federal court.

*Campaniello*, 117 F.3d at 667.

The claim does not pass the *Iqbal* test: Plaintiff does not present to the Court "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). Indeed, there is no evidence presented to the Court that there was any fraud related to the arbitration clause itself. There is no dispute that the parties negotiated the agreement and arbitration provision. "There are no allegations that appellants were not aware of the content or import of the arbitration clause; the parties were involved in arms-length negotiations over the specific terms of . . . the arbitration clause." *Id.* The Court finds "no facts which suggest that fraud was 'an issue which goes to the 'making' ' of the agreement to arbitrate." *Id.* (quoting *Prima Paint Corp.*, 388 U.S. at 403-04). As in *Campaniello*, Plaintiff has

> not suggested that [it was] in any way misled as to the import or content of the arbitration clause; in fact, the arbitration clause was specifically . . . a result of arms-length negotiations. [Plaintiff] may not now establish a connection between the alleged fraud and the arbitration clause in particular merely by adding the allegation that the arbitration clause was a part of the overall scheme to defraud.

*Id.* at 668. As Judge Spatt has recently held, "bare allegations regarding the voidability of [an] arbitration provision are not sufficient and the plaintiff must provide some evidence substantiating its contentions." *Simply Fit of N. Am., Inc. v. Poyner*, 579 F. Supp. 2d 371, 381 (E.D.N.Y. 2008) (citing *Sphere Drake Ins. Ltd v. Clarendon Nat. Ins. Co.*, 263 F.3d 26, 32 (2d Cir. 2001).

From its proposed complaint to its various submissions in support of its motion, Plaintiff continually mentions the fact that the Agreement orders the arbitrator to "deem" the value of the

11

inventory at $8.4 million as evidence of a fraudulently induced arbitration provision. *See e.g.*, Pl.'s Letter in Supp. for Leave to Amend Compl. at 6, Nov. 15, 2010, ECF No. 35 ("Simply put, the arbitration clause provides that the arbiter must apply . . . [Defendant's] inflated number as the 'deemed' value of the inventory."). The Court does not know which would be worse for Plaintiff's case: if Plaintiff is correct or incorrect as to this assertion. On the one hand, if Plaintiff's assertion is incorrect, "deemed" is nothing more than a starting point for the arbitrator and, thus, does not bound the arbitrator to find that value. On the other hand, if Plaintiff's assertion is correct, and the "deemed" value must be adhered to by the arbitrator, then this is the fault not of a fraudulently induced arbitration provision, but of the effects of outlandishly poor contract lawyering. The provision was negotiated and agreed-to. If the arbitrator *is* bound to the "deemed" value, that meaning should have been apparent to Plaintiff once it was first added to a draft copy of the Agreement. The Court can protect contract-parties from fraud or other misdeeds; it cannot, however, protect parties from retaining substandard contract counsel.

"In short, [the Court] find[s] no facts which suggest that fraud was 'an issue which goes to the 'making' of the agreement to arbitrate.' " *Campaniello*, 117 F.3d at 667 (*quoting Prima Paint Corp.*, 388 U.S. at 403-04). The amendment to the Complaint—as to fraud in the inducement of the arbitration provision—would, therefore, be futile and, thus, the Court denies the proposed amendment to the Complaint.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to Amend its Complaint is **DENIED**.

**SO ORDERED**.

Dated: January 18, 2011
Central Islip, New York

Thomas C. Platt, U.S.D.J.